Air 21 provides that no air carrier may discharge an employee because the employee provided cause to be provided or was about to provide information related to any violation or alleged violation of an order, standard, or regulation of the FAA. The statute provides that the secretary may determine a violation has occurred only if the complainant demonstrates that protected conduct was a contributing factor in the unfavorable personnel action. Contributing factor is one which alone or in conjunction with other factors tends to affect in any way the outcome of the decision. As the Department of Labor's brief states, to be a contributing factor, the protected conduct need not be the sole or even the primary reason for the action taken, so long as it played a role in the decision. The reason the Congress created the contributing factor standard was to overrule then existing case law, which required a whistleblower to prove that protected conduct was significant, motivating, substantial, or profound. Let's talk about protected conduct. In this particular case, the mechanics did not go to the FAA. They didn't go around management. They didn't go to the press. As I understand facts, unless you can help me with them, the most that happened was that I believe it was Mr. Sievers said that it would be wrong to let this plane go without more work. Is that the protected conduct? The protected conduct was internal complaints, two types, Your Honor, the first of which was the engine vibration incident, which even the ARB said was protected conduct. The second type of protected conduct was the --- Well, we know, though, what the ARB said, but the question is, was the ARB, the ARB correct in saying that it was protected conduct? It may not have been protected conduct. According to the statute, yes. The statute encompasses internal complaints as protected. There's nothing in the statute that's- It's a complaint to the agency or the employer, isn't that right? Help me with the statutory- Yes. The statute says provided, protects, it says no discharge is permitted because the employee provided, caused to be provided, or is about to provide- Right. To the employer or the Federal Government, information relating to violations of orders, regulations, or standards of the FAA relating to air safety. What you're saying is that, well, you have to rely on information provided to the employer. That's the specific word you're relying on. Yes, Your Honor. Congress specifically allowed internal complaints to the employer to constitute protected activity under Air 21. And what complaint was provided to the employer that this particular employee was not required to provide in his duty anyway? He refused to sign off on an airplane that the mechanics did not know was airworthy. The pilot- But that's part of his duty as a normal employee. I mean, what did he do to go to any employer or Federal Government person and suggest something more than what he did on a regular basis? That, I mean, my worry about this is, and I realize where the board went, and I realize also where the ALJ went, but to me, we've got to have some protected activity. If the person is in safety, which this person one could say is, he's the head of the mechanics, and he's in safety, and his normal decision is to decide whether airplanes go or not, and the fact that he said they're not going, and he never went above his boss, he never went to the government, he never went to anyone else except to go to his own boss, if you will, and say, this is why I did what I did. Air 21 protects complaints to the employer, protects the provision of information, and upon reflection, what Mr. Seavers did here was provide information, both in the specific engine repair incident, but also more broadly, because he was a member of a class that included the four supervisors. So you're suggesting, then, that he should not even have to report to his supervisor as to why he did what he did, and if he does, that's a violation? I'm suggesting that it would be an error to interpret this in such a cramped manner that an employee has to deliver a letter, or hereby is a communication. We're not talking about that. We're talking about just talking to his supervisor. That's all he did. He talked to his supervisor about the situation. His supervisor questioned him about what he had determined, and he said, don't go there, and that was the end of it. To answer the question more fully, Your Honor, I think it's useful to look at the highly regulated framework in which auto or, excuse me, air mechanics work. All of everything they do is governed by rule. The general procedure manual is approved by the FAA. Everything they do has to be written down. They cannot release an aircraft unless it's per something. When a mechanic identifies a repair, he has to make the repair, or unless it can be permissibly deferred, he can write out something saying it's released per something. Now, in this case, we have a history of antagonism between the senior management and the Portland Station in particular because they are rigidly adhering to the regulatory framework, even when it would be silly to ground a plane. So we had the incident of the cracked interior window cover. Mr. Hirschman was very upset about that, and Mr. Seavers admitted that it was silly, but the Portland Station couldn't move the plane because it didn't have the paperwork in order. They looked all night for a deferral. They couldn't find a deferral. So it was a tough decision to make. They knew subjectively the plane wasn't going to crash because the window cover was broken. But they operate in this rigid adherence to regulatory authority. We have to have a piece of paper in place, and that's what they said. The management let them, in the end, the management allowed the mechanics to do what the mechanics thought should be done. All the repairs were made, yes, but Air 21 doesn't contain an exception when the repairs are made. It's designed to protect the employees providing air safety information. Okay, but putting this in context, Air 21 allows a right of action in a whistleblower context. The problem here is that the termination, allegedly, was based on padding time cards or something to that effect. Is that not true? The stated reason for the termination was time card padding. And again, to return to the statute, my job is to satisfy the statute which says you can't  That's a question of intent. Let me try again. You know the facts better than I. I just have to read these things, and I've been reading them now for a month and a half. I've read, and I've read. What is it that your client did to provide to the employer or government information relating to a violation or alleged violation? What are the facts? Not just, let's just go with the engine problem. What did he do? Who did he talk to? He talked to Lloyd Golden, his supervisor. Which was his supervisor? Did he talk to anybody else? And Golden told. Did he talk to anybody else? He talked to CurlFink indirectly because CurlFink was pressuring Golden to get Sanders to sign off. I understand, but we're really talking about a protected activity here. And that's why I'm questioning you about that. What did he do? His normal supervision was one guy. This one person, who is his normal supervisor, asks him why he does something. He responds and says, don't push me any further. And I'm to suggest that that's a protected activity? He told Golden, I'm not even going to go there. You're asking me to use my Federal A&P license to sign off on a plane to certify, under Federal law, that the plane is airworthy, when I don't know that it's airworthy. Well, my worry is this. It is the norm under these kind of situations that one would go to employment. But one is not going to a supervisor. One is going above the supervisor and saying, they're not doing it the way it ought to be done. And therefore, we have a violation. Or one is going to the government and saying, they're not doing it the way it ought to be done. In both of those situations, I can see whistleblower. But merely being questioned by a supervisor, I'm having a tough time. That's why I'm asking somebody with the facts to lay it out for me. Why is that a protected activity? To respond to your supervisor. Your Honor, this case is not the norm. The facts drove us to the allegations that we made. Mr. Seavers alone filed the Air 21 complaint. But in discovery, we soon found that there was this target on the back of the Portland supervisors. All four supervisors were fired, three of them in one fell swoop. And the other one boothed a few days before. There was this antagonism of hostility, in the words of the ALJ. But this tension over in the Portland supervisors felt that they were getting pressure to inhibit the identification of repair. This is critically important under the federal system. If a mechanic finds something broken on an airplane, he's got to fix it, unless it can be permissibly deferred. But if he doesn't know it's there, he doesn't have to fix it. So the pressure is coming down when they say, we've got drooping wing slats in Portland. And they call this in at the 830 meeting. Why are you looking there? You're not supposed to be looking there. So there's this tension there. Because the mechanics have a federal duty not to sign off on an airplane unless they can say, in good faith, there's no condition that it would make it un-airworthy. At the same time, Alaska's managers are trying to improve their statistics and reduce down to three the number of out-of-service aircraft. A goal that Mr. Kerlfink thought was unattainable. So you have this pressure. So when you go to return to your question about protective activity, we've got not only Mr. Sievers, but we've got the others. And when I look at the statute, and I have to prove that it was because of, it's a question of intention. Whose intention? Brian Hirschman, who's the man who made the termination decision. I have to look at what is his intention. The facts are, he terminated all three of these men at the same time, over the same incident. And his intention to terminate Shields and James, as well as Sievers, informs his decision to terminate Sievers. So I look at the least culpable, Shields. Shields gave away an hour and 30 minutes of time card, but Hirschman still terminated Shields. Because all of them were perceived as a problem station. Kerlfink said it was the supervisors there that were the problem. Now coincidentally with this, there's this time card investigation that targets just Portland. As the ALJ found, it was rife or replete with suspicious circumstances. Well, all right, counsel. Suppose we were to conclude that Alaska has waived the vibration incident. In which case, we could presume, and all I'm saying for the sake of argument, presume that it was protected and that the finding cannot be challenged at this point. Let's get to the next stage. What happens after that? In terms of the analysis on causality, where's the causation? Well, contributing factor is the standard that Congress incorporated. Too many whistleblowers were losing their cases. And Congress specifically intended to relax the burden of proof. They wanted to get away from this cramped interpretation where you don't get jury trials in these cases, unfortunately. And what happens is these board members were saying, I don't see it. It's still speculation in my mind. So Congress specifically said, we're getting rid of that. We're making a contributing factor, which is a very easy standard to satisfy. Let me ask you this. What is the burden of proof on your clients as to a contributing factor? All we have to show, Your Honor, is that the protected conduct contributed in the broad language you have a burden of proof as to that? We have to demonstrate is the word in statute. Well, how do you demonstrate it? To prove by a preponderance. To prove by a preponderance that it tends to affect in any way the outcome, which is the moral. Okay. So you're agreeing, then, you at least have a preponderance of the evidence standard? But that word, preponderance, is in the statute. But we should morph that back into the motivating factor standard, which is precisely what the Department of Labor has done here. Well, but just a minute. My worry is this. If, in fact, you're really saying you have a preponderance of the evidence standard, then at that point, the Department of Labor, the board has to determine whether you've met the preponderance of the evidence before they even shift that burden back to the airline carrier, don't they? Preponderance that it was, that it tended to affect. That's a very slight standard, Your Honor. That's all we have to show. Well, I guess I'm trying to figure out, can that be determined, can that be met with mere circumstantial evidence? Of course. Employment discrimination cases in general, there's hardly ever direct evidence. They're all built on circumstantial evidence. Okay, so all I'm trying to do is get you to the next question.  Whether there is circumstantial evidence to sustain your burden. And because in this point, they suggested there was not enough circumstantial evidence to sustain the burden. They suggested that even though there was circumstantial evidence there, which might have suggested what you're saying, that given the whole of what they saw there, that circumstantial evidence was not enough. So why is the why is there error then? Your Honor, as employment discrimination cases go, there's a mountain of evidence here. If this were a jury case, a typical Title VII case, for example, we would have ground after ground after ground to get to the jury. For example, absence of documentation, that alone gets you to the jury under McGinnis. Failure to follow procedure, that alone gets you to the jury under Porter. A disparate treatment, that alone gets you to the jury under Acosta. Plus, we have suspicious circumstances. There's a mountain of it. Any of that would have gotten us to the jury here. But still, under the cramped interpretation of the Department of Labor here, they're just going, it's not enough, not enough. That's speculation. That's what's the test? They don't define speculation, which is back to the precise problem that Congress sought to address when it put the contributing factor standard in. They weren't writing on a blank slate. Lots of whistleblowers were unsuccessful because these board members sit back and they say, well, I don't see it. I don't see it. And it's right. Well, so then what is my standard of review of their decision? It's error of law as to... Well, just a minute. It can't be error of law if all we're doing is talking about whether there was circumstantial evidence enough to be preponderance in order to have met the burden. What is my standard of review? It seems to me at that point I have a standard of review as to that decision. What is it? It isn't de novo. It's error of law not in accordance with law in the basic statute of judicial review of administrative actions. Clearly erroneous for not in accordance with law. Now, in this case, the law said, force of law regulation, the ALJ's findings are, if supported by substantial evidence, have to be adopted. So she made these findings and they have to be adopted if they're supported by substantial evidence. And I'd like to briefly... That's the key, isn't it? The question is, were the findings of the administrative judge supported by substantial evidence, and isn't that for the Board to determine? Well, the Board has to look at the record as a whole, Your Honor, under universal camera. And we presume they did. Well, let me take one example, the disparate treatment. They said somehow the ALJ, they flipped the ALJ on that. She made a finding that there was disparate treatment. The Board says somehow the ALJ ignores the plain fact that when they fired Seavers, they also fired James and Shields, so therefore there wasn't any disparate treatment. That's just not in accordance with disparate treatment law. The notion of proof of circumstantial evidence of retaliatory conduct through disparate treatment means that you're making a special case of somebody who's engaged in protected conduct. You're treating them differently than others. And a central fact in this case is Alaska never terminated a supervisor before for fraud. And all of a sudden, without a clear warning, they terminate all of these. And again, the warning, the ALJ specifically found that those warnings were directed to mechanics, not supervisors. Now, one might quibble with that, but under the standard of review, if it's supported by substantial evidence, the ALJ's findings have to be upheld. And it's clearly, if you look at those warnings, we're talking about mechanics and marking their time cards. I see I just have about 15 seconds. I'd like to reserve the balance of my time. Yes, you may, counsel. Thank you. We'll hear from the other side. May it please the Court, my name is Mary Reser. I represent the Secretary of Labor, the Administrative Review Board in this case. Counsel, your side has a total of 20 minutes. How do you propose to allocate it? I will take 10 minutes. All right, but watch the clock. What counts is the total of 20, so how you allocate within that 20 is up to you. Okay, thank you. Your Honor, Air 21's whistleblower protection provision says, protects employees who provide information to an employer or to the federal government about air carrier safety violations. Now, here, the Administrative Review Board upheld the ALJ's conclusion and found that her factual findings were supported by substantial evidence that Mr. Seavers did, in fact, engage in protected activity when he refused to sign off on the engine violation and told his direct supervisor that he wouldn't do it. The issue here is causation. So you're agreeing that that is protected activity and there was substantial evidence to suggest that it was? Yes, Your Honor. Thank you. The Board did correctly apply the Air 21 statutory burdens of proof, which the Air 21 provides that a complainant can prove a violation if the complainant demonstrates that his protected activity contributed to the adverse personnel action that was taken against him, and the Board correctly found that Mr. Seavers did not prove this by a preponderance of the evidence. The Board correctly reviewed the ALJ's factual findings under the substantial evidence standard, and this Court's standard of review is the APA standard of review, which is deferential to the Secretary of Labor. And the Secretary's decision and the Administrative Review Board's decision in this case should be upheld unless arbitrary, capricious, or otherwise contrary to law. So really what you're suggesting to us is we're not going to look at the ALJ's decision at all. We're looking at the Board's decision, and we're determining whether the Board is supported by substantial evidence or acted arbitrarily and capriciously otherwise. And otherwise than that, we would have to affirm. We would say that this Court is reviewing the Board's decision. That is the final decision of the agency, but this Court may take into consideration the entire record, including the ALJ's findings and the ALJ's decision as well. So do we interrupt what the Board has done because we don't believe that they did what the ALJ suggested to do even though there is substantial evidence that could go either way? The Board found that there was not substantial evidence to support many of the ALJ's findings, including the finding that Alaska did not warn Seavers and deviated from its procedures. The Board found that, in fact, there were documents in the record that showed that Mr. Golden had sent a memo around to all maintenance employees, which includes maintenance supervisors, that warned all employees in July of 2002 that altering a time card for anyone was not acceptable. It could lead to disciplinary action and discharge. In addition, the Alaska system's regulations said that altering, punching, or making entries on another employee's time card is not acceptable. It's against the rules. Falsifying records would not be tolerated. And in addition, under progressive discipline, the employees could be suspended or immediately discharged without prior discipline or corrective action in serious cases. And here Mr. Seavers admitted that he punched the time cards of two employees and also patted the time cards of other employees. The ALJ's finding also that there were suspicious circumstances was again rejected by the Board. The Board did not find substantial record evidence to support that finding, that there was deviation from procedure because in the investigation itself, Mr. Golden didn't get the other supervisors involved. But the Board found that there was no explanation by the ALJ how this possibly related in any way to Mr. Seavers' protected activity or his termination. Well, counsel, the Board was applying McDonnell-Douglas. Do I have that correctly? The Board actually, no. The Board applied the Air 21 burdens of proof. And the Board looked to see if there was any evidence, if there was a preponderance of the evidence that supported Mr. Seavers, that supported a finding that the protected activity that Mr. Seavers engaged in contributed in any way to the decision to terminate him. That is the burden of proof it used, but the ALJ had a full hearing. So evidence was, the record is full of evidence from both sides and including evidence of the termination and the investigation that surrounded the time card abuses. What Go ahead. My worry is this. And frankly, you know, I may disagree with the Board. I may think that the ALJ made the right decision. But again, I'm on standard review here. Here we have a standard review. It's my understanding, you confirm it, that I am reviewing the Board's decision here, correct? That's correct. And I'm reviewing it for substantial evidence? Yes, Your Honor, you're reviewing the factual findings for substantial evidence. And I am also determining whether they were arbitrary or capricious. In other words, I'm saying, did they abuse their discretion in what they did? Yes, Your Honor. Now, as I understand that, then I look at their decision. My worry is, do I also look at their own interpretation of what the ALJ did? I mean, my worry is this. If I disagree with what they did at the ALJ, can I undo them? Or do I have to give them the substantial evidence and abuse of discretion standard even if I disagree? Yes, Your Honor, I would say that the latter is the case. That you would review the Board's decision to see if it is supported by substantial evidence. And in reviewing the Board's decision, you would necessarily look to see if the Board correctly applied that same standard to the ALJ's decision. And in also talking about McDonnell-Douglas, the only way that McDonnell-Douglas comes into this is to analyze the proof. And for example, one way to show, one form of circumstantial evidence would be to show that the termination decision was pretextual. And that would show, that would tend to show that his protected activity was taken into account. Well, that was not the case here. But does that change the allocation? No, it does not. It does not. Because the Air 21 has statutory burdens of proof, which say that you just need to. And that's what my focus is. That's right. To what extent does the statutory allocation of the burdens here conflict with McDonnell-Douglas, and in particular, how the Board applied McDonnell-Douglas in this case? I don't believe there is a conflict at all. There's no conflict. Okay. So do we just look at the entire record, maybe even apart from the administrative judge's decision, we just look at it all, and if there's exactly equipoise between the evidence in support and the evidence not in support as a contributing factor, we say that's for the Board? That's correct, Your Honor. What if it's 60 percent, 40 percent more substantial evidence against the Board's decision? Is it still arbitrary and capricious as a standard? I would say that it would not be. That the Board's decision is really the final decision in this case, and if substantial evidence supports the Board's decision, it should be upheld. And you're even saying, are you not, and this is the thing that's most worrisome to me, because this seems like a jury trial. I mean, a jury might disagree with what the judge believes altogether, but if there's substantial evidence to sustain what the jury does in a civil case, even if the judge disagrees, we still have to sustain the verdict of the jury, don't we? Yes, Your Honor. And is this not the same standard? It would be the same standard. Counsel, you're down below 10 minutes. I'm sorry, Your Honor. Thank you. Oh, no, that's fine. It's my problem. I caused it. Okay, that's fine, Counsel. We'll hear from Alaska Airlines. Yes, Your Honor. Kevin Baumgardner for Alaska Airlines. May it please the Court. If I may return just briefly to Judge O'Scanlan's pretext analysis question. I don't believe that by engaging in pretext analysis, either the ALJ, which did so, and in fact, Mr. Spalding's brief actually engaged in pretext analysis, or the ARB changed the standard, because there is that burden of proof to prove by preponderance of the evidence that there was a contributing factor. And we know in this case that it was a case with only circumstantial evidence. There was no direct evidence to meet that burden of proof. And so appropriately, the ARB looked to whether there was a pretext or some sort of other way that could be shown, because frankly, he couldn't meet the burden of proof based upon direct evidence. So it was another way of looking at that same issue. And I would submit that opposing counsel has confused the burden of merely coming forward, which is in that subsection I of the statute. It's 42121 b 2b i, and that's the burden of coming forward with a prima facie case, versus the burden of proof that he actually has before the burden shifts to Alaska Airlines, which is in sub C. Counsel, I have a threshold concern with respect to the failure to prove protected activity. You challenged that on four incidents, but I found nothing in the brief with respect to the vibration incident. So are you conceding the vibration incident? You waived it? Well, Your Honor, it's the court's decision as to whether we waived it. I will, just to be very candid, tell you that as a tactical matter, we chose not to cross appeal on any issue. We obviously disagree with it. I kind of wish that at this point that we hadn't so chosen. But what I would direct Your Honor to is the causal link that is necessary to be established. I think that the way that the ARB looked at the engine vibration incident. All right. So you're suggesting, or at least if I read you correctly, you don't object to our simply assuming that the ARB was correct, that it was protected activity, at least as to the vibration incident. I think that's correct. That's certainly the way we analyze it, Your Honor. That's a fair statement. All right. So this case is all about causality. This case is about causation and focusing specifically on that one incident. The evidence is clear that there never was any communication afterwards, any substantive communication from either side, either from Alaska Airlines to Mr. Seavers or from Mr. Seavers to Alaska Airlines. No communication as to? Engine vibration incident, none whatsoever. He never heard about it again after that day. That is in the record. But what we're really saying is, and this was going to be my question to counsel, we're really talking about standard review again. There is no reason for you really to appeal the board's decision as to finding a protected activity on substantial evidence, because you're really saying there's substantial evidence to sustain the board's decision at all. And you're arguing that that's the point. So it does you no good to challenge that decision as the protected activity. I agree, Your Honor. And particularly when the standard under universal camera, which was applied by the board, is to look at the evidence as a whole. And looking at the evidence as a whole, Your Honor, a unique feature of this case is just the wealth of admissions by Mr. Seavers that he never even came close to making a complaint about this or any of the other five or four. Well, put all that aside for a second. When I read this factual background, I just got the feeling that these guys got a raw deal by management. These are people who seem to be sincere, safety conscious mechanics who were trying to do the best to protect the air flying public and resist pressures to cut corners by upper management. Now, that's how it looks to me. Now, we also have to deal with what the procedural rules tell us to do. But why can't we take a look at the recitals that this was a common for adding the time cards was a common practice, not only at Portland, not only at other places like Los Angeles, not only at Alaska Airlines, but in many other airlines as well throughout the industry as a device to allow people who are on one shift to continue working until the problem got taken care of. Why can't we take that into account? Because, Your Honor, the question is, was there a legitimate reason? And the other side of the question being was protected activity the causation? And whether or not however you judge the wisdom of Alaska Airlines management's decision on a legitimate reason to discipline these supervisors and the decision to terminate them, A, that doesn't change the fact that there is no causal link to protected activity in this case. And B, if you look at the record in evaluating that decision, you can see that Mr. Golden on July 19th of 2002 had warned all the management employees, all the not to engage in this type of activity. And you have to step back a little bit. And this is, again, something that Mr. Seavers admitted to. He admitted that a new regime had come into place at Alaska Airlines. This was the 261 crash was brought up and the entirety of the management team at Alaska Airlines, not management in the maintenance department, was changed. And when that happened, they were sticklers, as Mr. Seavers said in his testimony, for following the rules. And one of the rules that they wanted to change was any type of deviations on time cards. And they made that very clear. And there was this written warning that Mr. Seavers admitted that he read. And he admitted that he was never told by Mr. Seavers to punch people's time cards. Is there evidence that he was notified that the policy had changed? Well, he was certainly notified in that July 19th, 2002 memo. That's pretty emphatic, Your Honor. If you look at that memorandum, it says that altering another employee's time card can lead to discipline up to and including termination. And it went to all maintenance employees. He admitted that he read it. So again, yes, there was a change in Alaska Airlines' management philosophy. Yes, these supervisors were among the first to suffer the consequences of that change. But they were warned about it, Mr. Seavers admits, having received those warnings. You say among the first, but were there others later? I don't see that in the record. Well, they were the first and last. They were the ones that stopped. Actually, I don't know beyond that, Your Honor, up to this date. I will say, though, Your Honor, that there had been maintenance employees who were not supervisors who'd been terminated for punching each other's time cards. This was the first supervisor. Correct. That is correct. What we really do is look in the minds of the Alaska management and determine what was the reason for their decision. That's one side of it, Your Honor, in terms of whether there's legitimate reason. But keeping in mind that under the burdens of error 21, certainly there was a wealth of evidence that was brought forward to meet that burden of production, that there was a legitimate reason. The burden then shifts to Mr. Seavers to prove that protected activity was causally linked to the termination, and he hasn't done so. And, Your Honor, just in the brief time I've got left, I would point out the number of places that we have pointed out, and in fact, the ARP pointed out, where the ALJ's reasoning did not take into account the record of the whole. For instance, in saying that the supervisors were never warned, which is just flatly contradicted by that July 19, 2002 memo. And in finding, you know, this isn't really a finding. It's really more of a fact. But in drawing significance to the relative temporal proximity of the engine vibration incident, which occurred in between January and March, according to Mr. Seavers, and its termination, which occurred in July, but not pointing out that in April he had received an overwhelmingly positive performance review, again, something that was ignored by the ALJ. I see my time's up, Your Honor. Thank you, counsel. Mr. Spaulding, you have a little reserved time. Thank you, Your Honor. Just three quick points to Judge Smith's concern about the standard of review. I'd urge the Court to look at Pogue, Mokowiak, and Penzikidos, which are all cited in our brief, specifically the issue about tenuous at best. When the ALJ makes credibility findings that the ARP, in turn, or the board, in turn, disagrees with, the Court talks about tenuous at best. And there was a credibility finding here. Moreover, in this case, there was a specific notice and comment period. And it was decided, this is force of the law, that the board shall accept as conclusive ALJ findings of fact that are supported by substantial evidence. And that's in Addendum 11 to my brief. Finally, I want to point to the fact that the Supreme Court, very recently, said we must be careful not to apply, under one statute, rules that were intended for a different statute without critical examination. And that's what happened in this case. What happened therein was that courts had been using, in age discrimination cases, Title VII authorities. And the Supreme Court said there's a different standard. It's a but-for standard now in cases under the ADEA. But you do concede, don't you, that there are specific allocations in this statute that have to be followed? Exactly. And the Congress specifically said that we have a contributing factor standard in this statute, more liberal than Title VII, more liberal than ADEA. But the board is the final determination on this, are they not? I mean, it's just like a judge in a jury trial. The judge may decide that something the jury did was not exactly the way the judge would do it. But on a preponderance of the evidence standard, the jury only has to have substantial evidence to sustain what they do, even if it isn't 70% or 80% of the evidence. As long as it's substantial evidence, the jury is sustained. And my worry is that now you're asking me to say, in a similar decision of the AARB, where they have the final decision as to whether the ALJ did the right thing or whether they didn't. And in that particular situation, if there's substantial evidence which would How do I undo it? The ALJ's decision is akin to the jury's decision, Your Honor. The ALJ heard the evidence, observed the witnesses testify, and made the decision. And her conclusions clearly are supported by substantial evidence. But I'm not reviewing her decision. I'm reviewing the AARB's decision. But we have a law, a regulation of the force of law, that says that her decision, the ALJ's, shall be accepted as conclusive if supported by substantial evidence. Thank you, Counsel. If supported by substantial evidence. So we still have to measure substantial evidence. Yes, Your Honor. And Judge Tarkington's decision has substantial evidence supporting every finding. We can go through finding after finding. She found that the time card investigation was suspicious on several counts. Now, the AARB said it wasn't. It wasn't predesigned. But so they disagree there. But under the law that we have here, Judge Tarkington, the ALJ's decision stands if it's supported by substantial evidence. And she painstakingly described what the evidence was in her opinion. Thank you, Counsel. Our questions took you way over time. Thank you very much. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Wolle, O'scannlain, Smith M.